(105 So. 390)

## HAM v. STATE.   (8 Div. 273.)

(Court of Appeals of Alabama.   Aug. 11, 1925.)

**1. Indictment and information ⬥137(5)—That sheriff did not forthwith serve jury list upon accused, as required by statute, held not ground for quashing indictment.**

That sheriff did not forthwith serve jury list upon accused, as required by Code 1923, § 8644, *held* not ground for quashing indictment, in the absence of showing that the sheriff entirely failed in that duty, or what delay, if any, occurred.

**2. Jury ⬥116—Negligence of jury commission held not grounds for quashing venire, because failing to establish fraud.**

Negligence of the jury commission, pertaining to the filling and keeping of the jury box from which the venire was drawn, *held* not grounds for quashing venire, because failing to establish fraud.

**3. Criminal law ⬥789(4)—Requested charge as to reasonable doubt held properly refused as involved and confusing.**

Requested charge that no preponderance nor any weight of preponderant evidence was sufficient to support a conviction, unless it generated "any belief of the facts necessary to constitute guilt of accused to the conclusion of all reasonable doubt," *held* properly refused as being involved and confusing.

**4. Criminal law ⬥785(16)—Requested charge held properly refused.**

Requested charge that, if jury believed any material testimony of all the state's witnesses was willfully false, then they could disregard all the testimony of "such witness," *held* properly refused as involved and confusing.

**5. Criminal law ⬥805(1)—Elliptical charge properly refused.**

Requested charge, which was elliptical and therefore meaningless, was properly refused.

**6. Criminal law ⬥772(6)—Requested charges held properly refused as being argumentative.**

Charge that if the facts, no matter how strong, might be reconciled with the theory that another might have committed the crime, accused should be acquitted, *held* properly refused as argumentative.

**7. Criminal law ⬥784(7)—Requested charge held properly refused as being argumentative.**

Charge that conviction could not be had, unless to a moral certainty the evidence excluded every other reasonable hypothesis but that of the guilt of accused, and that no matter how strong the facts, if they could be reconciled with the theory that some other person might have done it, guilt of accused was not shown by that degree of proof required, *held* properly refused as argumentative.

**8. Criminal law ⬥814(17)—Requested charge held properly refused as having no application, where guilt does not depend on circumstantial evidence.**

Charge that if the facts, no matter how strong, might be reconciled with the theory that another might have committed the crime, accused must be acquitted, *held* properly refused as having no application, where the guilt of accused did not depend on circumstantial evidence.

**9. Criminal law ⬥814(17)—Requested charge held properly refused as having no application, where guilt does not depend on circumstantial evidence.**

Charge that a conviction could not be had, unless to a moral certainty the evidence excluded every other reasonable hypothesis but that of the guilt of accused, etc., *held* properly refused as having no application, where guilt did not depend on circumstantial evidence.

**10. Criminal law ⬥807(1)—Requested charge held properly refused as being argumentative.**

Requested charge that, unless jury found from the evidence beyond a reasonable doubt that defendant intended to kill J., and that the stray bullet killed L., jury could not find accused guilty of murder in the first degree, *held* properly refused as argumentative.

**11. Criminal law ⬥814(1)—Requested charges properly refused, when referring to accused's wife who was not on trial.**

Charges that there was no evidence that accused's wife was at fault in bringing on difficulty, and that, if jury believed evidence, they must find her free from fault, *held* properly refused, because referring to accused's wife who was not on trial.

**12. Criminal law ⬥763, 764(3, 4)—Court is not required to charge jury as to nonexistence of evidence of given fact.**

Court is not required to charge jury as to nonexistence of evidence of given fact.

**13. Criminal law ⬥782(9)—Refusal to give requested charge pertaining to sufficiency of evidence justifying conviction held not error.**

Requested charge that accused should not be convicted upon evidence which merely created a preponderance of probabilities, but, in order to convict him, the evidence should be so convincing as to lead the minds of the jury to the conclusion that accused could not be guiltless, *held* properly refused.

**14. Criminal law ⬥829(16)—Refusal to submit charge embodying correct proposition of law, already covered in given charges, held not error.**

Refusal to submit charge embodying correct proposition as to disregarding testimony of witness giving willfully false testimony, already covered in given charges, *held* not error.

**15. Criminal law ⬥784(7)—Requested charge held properly refused as being argumentative.**

Charge that, before accused could be convicted, state must show from the evidence beyond all reasonable doubt that accused was guilty of charge in the indictment, and that no matter how strong and cogent the circumstances, if they could be reconciled with the theory that some other person might have done the act, then the guilt of accused was not shown by the full measure of proof required by law, *held* properly refused as argumentative.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

16. Witnesses ⬤⟲372(2)—Question on cross-examination whether trouble existed between certain family and that of defendant held not admissible.

Question on cross-examination whether trouble existed between P. family and that of defendant *held* not admissible to show bias or interest of the witness, in the absence of showing of relationship between P. family and that of the witness.

17. Criminal law ⬤⟲382—Question whether certain individual and witness' father discussed trouble between witness' father and accused held immaterial.

Question on cross-examination whether or not certain individual and witness' father discussed trouble between witness' father and accused *held* immaterial, where neither such individual nor witness' father had testified.

18. Witnesses ⬤⟲270(2)—Cross-examination as to whether family, of which witness was member, visited accused's children while their parents were in jail, held properly excluded.

Question on cross-examination whether or not family, of which witness was member, visited accused's children during time their parents were in jail, *held* properly excluded as injecting distracting issue.

19. Witnesses ⬤⟲370(2)—Refusal to permit cross-examination of witness as to feelings of her family toward accused's family held error.

Refusal to permit cross-examination of witness, who testified to her own feelings toward accused's family, as to feelings of her family towards accused's family, *held* error.

20. Witnesses ⬤⟲319—Jury should be placed in possession of all facts calculated to affect credibility of witnesses.

Jury should be placed in possession of all facts calculated to affect credibility of witnesses, so that they may determine the credibility to attach to witness' testimony.

21. Witnesses ⬤⟲370(2)—Refusal to permit defense to cross-examine witness whether he knew of hostile relations between accused and witness' father-in-law held error.

Refusal to permit defense to cross-examine witness whether he knew of hostile relations between accused and witness' father-in-law *held* error.

22. Witnesses ⬤⟲370(1)—Refusal to permit question whether witness had not become angry with accused because he refused to permit witness to fish on accused's place held error.

Where state witness stated that he had never had any trouble or even a cross word with accused, refusal to permit defendant to test the truth of such testimony by asking question whether witness had not become angry with accused because of the latter's refusal to permit witness to fish on accused's place *held* error.

23. Witnesses ⬤⟲370(3)—Refusal to permit defense to show amount of money interested witness paid or promised in connection with prosecution held error.

Where state witness had shown more or less activity in employing attorneys to assist the prosecution, it was error to refuse to permit accused to show on cross-examination what amount of money witness had paid, or promised, for such purpose.

24. Witnesses ⬤⟲370(3)—That witness aided and advised when warrant sworn out held circumstance for jury on credibility of witness.

That state witness aided, advised, or assisted when warrant for accused's arrest was sworn out, *held* circumstance for jury to consider on question of credibility of witness.

25. Homicide ⬤⟲203(3)—Dying declaration held properly admitted.

Testimony that deceased, just after the shooting requested witness to hurry to a doctor because he (deceased) thought he would not live long, followed by state's inquiry as to what deceased said about the shooting, *held* sufficient predicate for admission of witness' answer that deceased stated accused shot him.

26. Witnesses ⬤⟲267—Refusal to permit defense to cross-examine witness as to who told him to answer question slowly held discretionary.

It was within the discretion of the trial court to refuse to permit accused's attorney on cross-examination of witness to ask him who told him to go slow in answering questions, and to look at the attorney, and say, "Do which?"

Appeal from Circuit Court, Limestone County; James E. Horton, Judge.

Will Ham was convicted of murder in the second degree, and he appeals. Reversed and remanded.

The second ground of the motion to quash the venire is that the jury box from which this venire was drawn was illegally filled and kept; that the box was not deposited in the vault or safe in the probate office, nor was the key deposited with the trial court; that the box, with the key insecurely fastened thereto, was kept in the office of the clerk of the jury commission from the time it was filled to the time this venire was drawn; that such office was frequently open, unprotected, unguarded, and easily accessible to trespassers; that the box was not filled by the jury commissioners with the names of every person possessing the qualifications prescribed by law to serve as jurors, but that only 1,200 names were placed in the box, when there were, in fact, 2,500 qualified jurors in the county.

The following charges were refused to defendant:

P. I charge you, gentlemen of the jury, that no preponderance nor any weight of preponderant evidence is sufficient to support a conviction in this case, unless it generate any belief of the facts necessary to constitute guilt of the accused to the conclusion of all reasonable doubt.

L. If the facts, no matter how strong, may be reconciled with the theory that another may have committed the crime, the accused should be acquitted.

L. The humane provision of the law is:

---

That there should not be a conviction upon the evidence unless to a moral certainty it excludes every other reasonable hypothesis but that of the guilt of defendant. No matter how strong may be the facts, if they can be reconciled with the theory that some other person may have done it, the guilt of the accused is not shown by that degree of proof which the law requires.

B. I charge you, gentlemen of the jury, that unless you can find from the evidence beyond a reasonable doubt that the defendant intended to kill John Page, and that the stray bullet killed Leonard Dildine, then you cannot find the defendant guilty of murder in the first degree.

BB. I charge you that there is no evidence in this case to show that Mrs. Ham was at fault in bringing on the difficulty.

AA. I charge you gentlemen of the jury that, if you believe the evidence in this case, you must find that Mrs. Ham was free from fault in bringing on the difficulty.

R. This defendant should not be convicted upon the evidence which merely creates a preponderance of probabilities, but, in order to convict the defendant, the evidence should be so convincing as to lead the minds of the jury to the conclusion that the accused cannot be guiltless.

M. The humane provision of the law is that, before the defendant can be convicted, the state must show to the jury, from the evidence, beyond all reasonable doubt that the defendant is guilty as charged in the indictment. And no matter how strong and cogent may be the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the guilt of the accused is not shown by the full measure of the proof the law requires.

The witness Page testified that the deceased made a statement to him just following the shooting, and while they were driving away from the scene of the difficulty, in which deceased said, "Hurry on; I have not got long to live, hurry on to the doctor"; that he was not going to last long. Thereupon the state asked the witness: "What did he (deceased) say about anybody shooting him?" Over defendant's objection, witness answered: "He said Mr. Ham shot him."

J. G. Rankin and R. B. Patton, both of Athens, for appellant.

On cross-examination, great latitude is allowed defendant to show bias or ill will against him. Hembree v. State, 20 Ala. App. 181, 101 So. 221. Bias or ill will between the family of a witness and defendant may be shown. Lodge v. State, 122 Ala. 97, 26 So. 210, 82 Am. St. Rep. 23. To show malice, ill will, and prejudice, a witness may be asked about particular troubles between witness and defendant, and his intent and motive for particular acts may be shown. Wright v. State,

19 Ala. App. 562, 99 So. 52; Patterson v. State, 156 Ala. 62, 47 So. 52; Soutoula v. State, 20 Ala. App. 364, 102 So. 151; Jones on Ev. (2d Ed.) 191. Where an element of circumstance is depended upon for conviction, the evidence must exclude to a moral certainty every reasonable hypothesis, but the defendant's guilt. Pickens v. State, 115 Ala. 42, 22 So. 551; Wilson v. State, 7 Ala. App. 134, 61 So. 471; Tatum v. State, 20 Ala. App. 24, 100 So. 570; Nix v. State, 20 Ala. App. 94, 100 So. 918. Fraud in drawing and summoning a jury may be raised by motion to quash. Code 1923, § 8644; Morris v. State, 146 Ala. 66, 41 So. 274. Before dying declarations are allowed, the deceased must be shown to have been conscious of impending death. Titus v. State, 117 Ala. 16, 23 So. 77; Justice v. State, 99 Ala. 180, 13 So. 658.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

BRICKEN, P. J. The defendant was convicted of murder in the second degree and sentenced to the penitentiary for a period of 10 years, from which sentence this appeal is taken.

[1] Numerous exceptions were reserved by the defendant and are here presented for review. The first question presented is the action of the court in sustaining demurrer by the state to the motion to quash the indictment. The motion to quash contained two grounds; the first being that the sheriff did not forthwith serve the jury list upon the defendant as required by section 8644 of the Code of 1923. It is not alleged that the sheriff entirely failed in this duty, nor does it appear what delay, if any, occurred. In the case of Scott v. State, 211 Ala. 270, 100 So. 211, four days elapsed between the drawing of the jury and the service of the copy on the defendant. It was held by the Supreme Court that this filled the requirement of the statute that the list be served "forthwith," etc.

[2] The allegations of facts set out in the second ground of the motion show reprehensible negligence on the part of the jury commission, if these allegations are true, but do not constitute grounds for quashing the venire. Gardner v. State, 206 Ala. 56, 89 So. 69. Such conditions should not be tolerated as those set out in this motion to quash. But, as stated, even the facts alleged fail to establish "fraud," etc., as contended by appellant.

[3, 4] Charge P requested in writing by the defendant is involved and confusing. The same is true of charge G. It instructs the jury that, if they believe that any material testimony *of all the state's witnesses* was willfully false, then the jury would be authorized to disregard all the testimony of *said witness.* The charge does not come up

to the requirements of such cases as Jackson v. State, 136 Ala. 22, 34 So. 188, and Carpenter v. State, 193 Ala. 51, 69 So. 531.

[5] Charge S is elliptical and therefore meaningless; it was properly refused.

[6-10] Both charges lettered L were properly refused. Besides being argumentative, they have no application where the guilt of the defendant does not depend on circumstantial evidence. Charge B is also argumentative.

[11, 12] Charge BB was properly refused because Mrs. Ham was not on trial, and further because the court is not required to charge the jury that there was no evidence of a given fact. The same is true of charge AA.

[13] There was no error in refusing charge R. Such charges were condemned by the Supreme Court in Edwards v. State, 205 Ala. 160, 87 So. 179.

[14] Charge E is similar to charge G discussed above, though free from the confusing element present in the former charge. Charge E appears to be a correct proposition of law, but its refusal was not error, for the reason that the court had already given charges covering the proposition. Given charge D was practically identical, except that it set out the names of the state witnesses, and the principle was covered by given charges C and one unlettered and unnumbered charge which we identify as charge Z.

[15] Charge M was argumentative.

[16, 17] On cross-examination of the state witness Miss L. V. Robinson, the defendant asked her if there had been trouble between the Page family and that of the defendant, stating that this was for the purpose of showing bias or interest on the part of the witness. In the absence of testimony showing any relationship between the Page family and that of the witness, we fail to see how an affirmative answer to the question would have tended to show bias or interest on the part of the witness. At this stage of the trial Page had not testified as a witness in the case and the fact that his family may have had trouble with the Ham family was not at that time material. The defendant further inquired of this witness as to whether or not Page and her father had discussed, just prior to the shooting, the trouble between witness' father and defendant. The court refused to go into this conversation, and correctly so, for the reason that this was entirely immaterial, as neither Page nor witness' father had testified. The condition of the windows at the George Robinson home was immaterial to any issue in the case.

[18] The trial court repeatedly denied to the defendant the right to propound to the witnesses for the state on cross-examination questions legitimately tending to show bias or interest. Some of the questions propounded along this line were improper, such, for instance as to whether or not the Robinson family visited the Ham children during the time their parents were in jail. The Robinson family might have failed in this neighborly duty, if we concede that it was under the circumstances a duty, for many reasons over which they had no control. If the question had been allowed, justice to the Robinson family would have demanded that they explain these reasons to the jury, thereby consuming needless time in the trial of the case, and injecting distracting issues.

We do not deem it necessary to take up seriatim each of the court's rulings on the evidence, but will cite only a few. The authorities hereinafter cited will be a sufficient guide on another trial. The defendant asked Miss Robinson the following question:

"You all (meaning the Robinson family) had a good deal of feeling towards Mr. and Mrs. Ham over this case?"

[19-24] The court permitted the witness to testify as to her own feelings towards the Ham family, but refused to permit her to testify as to the feelings of her family towards the Hams. In this there was error. The witness was a member of the Robinson household, where she lived with her mother and father. If the family, including the mother and father, had enmity towards the Ham family, it is natural to presume that the daughter would be in some degree affected by the sentiments and feelings of the parents. The jury should be placed in possession of all facts calculated to affect the credibility of witnesses to the end that they may determine what credibility to attach to the witness' testimony. The same question again arose on the examination of the state witness Wiley Pendley. The defendant should have been allowed on cross-examination to ask the witness if he knew of the relations between defendant and Pendley's father-in-law, Robinson. This witness had stated that he had never had any trouble or even a cross word with the defendant. To test the truth of this statement, the defendant should have been permitted to ask the witness if he had not gotten mad with the defendant for refusing to permit witness to fish on his place. This witness was evidently an interested witness. He had shown more or less activity in employing attorneys to assist the prosecution. The court should have permitted defendant to show on cross-examination what amount of money witness had paid, or promised, for this purpose. This identical question was decided in the recent case of Hembree v. State (Ala. App.) 101 So. 221.[1] If the witness was present aiding, advising, or assisting when the warrant for the arrest of defendant was sworn out, this was a circumstance which might well have been considered by the jury.

[25, 26] A sufficient predicate was laid for

[1] 20 Ala. App. 181.

the admission of the dying declaration. Nolan v. State, 207 Ala. 663, 93 So. 529. It was within the discretion of the court to refuse to permit defendant's attorney on cross-examination of the witness Page to ask him who told him to go slow in answering questions, and to look at the attorney, and say, "Do which?"

Many other questions were reserved by the defendant, but, as above indicated, we think that a detailed treatment of them is unnecessary, because, if they arise on another trial, they will be, no doubt, in a different form. We cite the following authorities as bearing directly upon most of the exceptions to the evidence, and as furnishing a sufficient guide for settling these questions should they again be presented in their present form. Lodge v. State, 122 Ala. 97, 26 So. 210, 82 Am. St. Rep. 23; Ex parte Morrow, 19 Ala. App. 212, 97 So. 108, and cases there cited. Byrd v. State, 17 Ala. App. 301, 84 So. 777; Cabele v. State, 18 Ala. App. 557, 93 So. 260, and numerous cases there cited.

For the errors indicated, the case is reversed and remanded.

Reversed and remanded.

