The appellant was convicted of second degree murder by striking Lettie Coleman with a U-Haul truck. Sentence was fixed at twenty years' imprisonment. Because errors occurring during the course of the trial effectively denied the appellant a fair trial this case is reversed.
 I
The trial court erred to a reversal in sustaining the State's objection to the question propounded by defense counsel to the daughter of the deceased as to how much she had paid a special prosecutor to prosecute the appellant.
 "In a long line of criminal cases, in this Court and in the Court of Appeals, it has *Page 993 
been held competent for defendant to show the amount paid or promised to a special prosecutor employed by a witness to prosecute defendant because it directly relates to the question of the witness' bias or interest. The refusal to allow such question has been held to be reversible error. Dickey v. State, 197 Ala. 610, 73 So. 72 (1916); Ham v. State, 21 Ala. App. 103, 105 So. 390 (1925); Hembree v. State, 20 Ala. App. 181, 101 So. 221 (1924); Davidson v. State, 19 Ala. App. 77, 95 So. 54 (1923)." Hunter v. State, 293 Ala. 226, 229, 301 So.2d 541 (1974).
See also Koger v. State, 38 Ala. App. 476, 87 So.2d 552 (1956) (recognizing rule); Brogden v. State, 33 Ala. App. 132, 134,31 So.2d 144, cert. denied, 249 Ala. 348, 31 So.2d 146 (1947);Tyson v. State, 29 Ala. App. 220, 194 So. 699 (1940); Williamsv. State, 21 Ala. App. 227, 229, 107 So. 37 (1926).
 II
The refusal to instruct the jury that reasonable doubt as to the guilt of the appellant might grow out of any part of the evidence is reversible error where such a charge is requested in writing and the proposition is not covered in the court's oral charge or in any of the given requested charges. Tillmanv. State, 360 So.2d 1074 (Ala.Cr.App.), cert. denied,360 So.2d 1075 (Ala. 1978).
 III
At trial State's witness Darrie Zeigler claimed his Fifth Amendment privilege against self-incrimination. Based on the recommendation and request of the Assistant District Attorney, the trial court granted this witness "complete immunity" from the acts that occurred on the night of November 16, 1975, and "any act growing out of that incident at that point". Before Zeigler testified the court changed its ruling.
 "MR. PARKER (Defense Counsel): I understood the Court to say that he was granting him immunity.
 "THE COURT: If the Court has any such authority. I don't know. But I accept the D.A.'s authority, and Mr. Zeigler will now be required to testify.
 "MR. PARKER: And I object and I except, and I assign the same grounds."
* * * * * *
 "THE COURT: I will change that to the extent that I don't know of the Court's authority. So, I am going to withdraw that. But I do recognize the District Attorney's authority, as Mr. Blocker has expressed here today.
"So, Mr. Zeigler will be required to testify."
This was error. In this State there is no general constitutional nor statutory provision authorizing the District Attorney to extend immunity to a witness and thereby compel his testimony notwithstanding its incriminating character. In the absence of such a grant of power no such authority exists.Gipson v. State, (Ala.Cr.App. Ms. October 3, 1978, 8 Div. 38). The general rule is that there is no inherent power in the prosecuting attorney to extend immunity to a witness against self-incrimination. 13 A.L.R.2d 1439, 1441 (1950).
 IV
When witness Darrie Zeigler's memory could not be revived or refreshed by his looking at a portion of his transcribed testimony before the grand jury, the State was allowed to place in evidence, over objection, portions of his grand jury testimony.
In laying the predicate for the admission of this testimony the State, after failing in its attempt to refresh the recollection of the witness, showed that the witness "recalled" testifying before the grand jury, that he answered the questions before the grand jury "to the best of my ability, the best that I remembered"; that he "did not knowingly tell a falsehood"; that he personally knew the facts on which he was examined; and that the events were fresh in his mind. The court reporter for the grand jury testified that the witness's testimony before the grand jury was recorded and that the recording device had been used prior to that occasion and was accurate. Another witness *Page 994 
testified that she typed Zeigler's grand jury testimony; that "everything was typed as it was said"; that nothing was added; and she identified a true and correct copy of his testimony.
The predicate for the admission of a document representing a witness's past recollection recorded is stated in C. Gamble,McElroy's Alabama Evidence § 116.03 (3rd ed. 1977).
 "A writing exhibited to a witness while he is on the witness stand and which purports to be a statement of a past event is admissible as evidence of the truth of the matter stated if the witness testifies that he now knows, or testifies to facts showing that he now knows, the following:
 "(1) That he personally observed the event or facts referred to in the writing and that the writing was made or seen by the witness either contemporaneously with the event or when his recollection of the event was fairly fresh.
 "It is not essential, to benefit from past recollection recorded, that the witness himself shall have made the writing. The writing may have been made by another person if the witness saw it when the event recorded was fairly fresh in his memory and he then knew the statements in the writing to be correct.
 "(2) That he then knew the contents of the writing and knew such contents to be true and correct.
 "Where the witness testifies that the writing is in his own handwriting, he may testify further that he knows from his general practice in making writings of that kind that what he wrote was true.
 "(3) That he has no present recollection of the event other than his testimony to the matters stated in 1 and 2 above."
The State did not run afoul of this rule. The testimony of a witness before a grand jury may properly be used to refresh or revive his memory upon the laying of a proper predicate.Thompson v. State, 99 Ala. 173, 175, 13 So. 753 (1892). The requirement that the witness know the correctness of the memorandum was satisfied when testimony was presented from different witnesses that Zeigler's testimony was truthful, that his testimony was accurately recorded and accurately transcribed. See Moundville Lumber Co. v. Warren, 203 Ala. 488,83 So. 479 (1919); Murray Peppers v. Dickens, 149 Ala. 240,244, 42 So. 1031 (1906); J. Wigmore, 3 Evidence § 751 (3) (Chadbourn Revision 1970).
 "As to the third exception, while it is true that the expression is found in the authorities that the person making the entry must have knowledge of the correctness of the item, yet it will be found that in those cases there was no proof by any one else of the correctness of the item, and it would seem, on reason, that if one party testifies that he knew of the correctness of the item and gave it correctly to the other, and the other testifies that he entered it as it was given to him, that that would amount to the same thing as if the party who made the entry should swear that he knew of the correctness of the item."
Dickens, 149 Ala. at 244, 42 So. at 1038.
 V
The appellant contends that the trial court erred by not prefacing the giving of his requested charges in strict compliance with statutory requirements.
In pertinent part, § 12-16-13, Code of Alabama 1975, provides:
 "The court shall, after the conclusion of his charge to the jury, read such written charges as he has given for the parties in a clear and audible voice, saying to the jury, `these are instructions given you by the court at the request of the plaintiff or defendant, as the case may be, and are correct statements of the law to be taken by you in connection with what has already been said to you'."
While the better practice is to use the identical language of the statute, Jordan v. State, 17 Ala. App. 575, 577, 87 So. 433
(1920), the court need not precisely follow the language of this section in reading the given charges to the jury. *Page 995 
 "Our judgment is that the form laid out in the section is nothing but a form, and that, when the trial court instructs the jury in every essential particular as the statute prescribes, no error results."
 Ritter v. Gibson, 217 Ala. 304, 307, 116 So. 158, 160
(1928).
Here the trial judge prefaced the giving of the requested charges with these remarks:
 "The Defendant's attorney has given me these charges which I will read and which state the law and should be accepted along with the oral charge I have just given you."
These remarks substantially comply with the statutory requirements. Therefore we find no error.
 VI
The appellant objected to the following portion of the court's oral charge as being an erroneous statement of the law:
 "A jury may or may not infer malice from the type of the killing unless the evidence which proves the killing shows also that it was perpetrated without malice."
The appellant recognizes that malice may be inferred from the use of a deadly weapon, Hadley v. State, 55 Ala. 31 (1876),Hardin v. State, 344 So.2d 234 (Ala.Cr.App. 1977), but alleges that malice may not be inferred from the type of killing.
Malice may be inferred from the character of the assault, that is, the facts and circumstances surrounding the offense.Kirkland v. State, 21 Ala. App. 348, 108 So. 262 (1926). It was held in Diamond v. State, 219 Ala. 674, 676, 123 So. 55, 57
(1929), that
 "when a person enters into combat with another, intending no more serious injury than an ordinary battery, and no weapon is used, and death ensues, the person thus causing death, if his acts were wrongful or unlawful, and nothing more appears, would be guilty of no higher grade of homicide than manslaughter in the first degree. . . . Still, if the force used is excessive and the assault brutal, malice may be inferred which would raise the grade of the offense to murder." (Emphasis added)
In Clarke v. State, 117 Ala. 1, 23 So. 671 (1898), involving an intentional beating of a pregnant mother resulting in the death of her infant after its birth, it was determined that malice could be implied from "an act malum in se".
Therefore, the portion of the oral charge treated above is not an erroneous statement of law.
 VII
The appellant also contends that the trial court committed reversible error in refusing to allow defense counsel to introduce testimony concerning the functioning of the grand jury and by overruling objection to a portion of the prosecutor's argument. We have carefully examined each instance of alleged error and find that the rulings were within the sound discretion of the trial judge. Finding no patent abuse of that judgment we find no error.
Because of any of the several errors occurring during the course of the trial, this case must be reversed and remanded.
REVERSED AND REMANDED.
All Judges concur.