93 So.2d 441

## Andrew BUTLER

v.

## STATE.

5 Div. 461.

Court of Appeals of Alabama.

June 19, 1956.

Rehearing Denied Aug. 14, 1956.

Geo. P. Howard, Wetumpka, for appellant.

John Patterson, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

Under an indictment charging murder in the first degree this appellant was found and sentenced to a term of ten years in the guilty of manslaughter in the first degree penitentiary.

The appellant and deceased were married, but had been living separate and apart for two years or more prior to the killing, the appellant living in Sylacauga, and the deceased residing at their former home, a trailer, about a mile north of Swayback bridge in Elmore County.

The evidence presented by the State tended to show that on the night of 14 August 1954 a woman was heard screaming in the direction of the trailer occupied by the deceased.

Very shortly, gun fire was heard, the sound of a smaller pistol being heard first, then the reports of two pistols being fired simultaneously.

Later, the appellant was taken off a bus at Wetumpka and carried by ambulance to a Montgomery hospital. The appellant was barefoot when removed from the bus.

At the hospital he told the ambulance driver to go back to his place above Swayback bridge and get a woman who was shot too.

The appellant was found to have three bullet wounds in his stomach, and one in his arm.

Law enforcement officers upon this information proceeded to deceased's trailer home above the bridge, and found the body of the deceased about 100 feet from the trailer near a path leading to a spring.

She was clad in a slip and bed jacket and had on sandals.

In her hand she gripped a .22 calibre target pistol containing 6 fired shells, and two unfired.

The deceased had been hit by two bullets, each lung, and her spine, having been thus penetrated.

The appellant's shoes were found at the spring, and tracks made by a bare foot were found at the spring, and on other parts of the premises.

When interviewed at the hospital by Sheriff Holley a week after the shooting, he stated that the deceased had shot him three times, and: "I knew that was it then and I let her have it." The pistol used by

appellant was a .32 calibre automatic, which was fired four times.

He further stated that after the shooting he had crawled and staggered to the highway, flagged a bus, and made it to Wetumpka where he had been taken from the bus and put in an ambulance and driven to the hospital.

The first three witnesses offered by the defense were offered for the purpose of testifying to the bad reputation of the deceased, and her bad reputation as to violence, bloodthirstiness, etc.

The State in each instance objected to the proffered testimony on the grounds that such evidence was inadmissible because of the absence of evidence sufficiently tending to establish that appellant had acted in self defense.

The court sustained the objections, stating that he reserved the right to change his ruling and admit such evidence if later evidence would justify its admission.

In his own behalf appellant testified that he had gone to the scene of the shooting in response to a letter he had received from deceased asking him to come back for a discussion of their difficulties, and a settlement of their differences as to property matters.

This letter, allegedly in the handwriting of the deceased, was received in evidence.

The appellant further testified that he had parked his automobile near Swayback bridge in order to check on a boat he had chained near there. He then proceeded to the scene of the shooting mostly by trails leading through the woods.

Arriving at the scene he saw and talked to his wife, and it appearing their differences could not be reconciled he started to leave. The deceased asked him to clean out the spring and he complied with this request, removing his shoes and socks at the spring to keep them dry.

Upon his return from the spring further discussion ensued, and the deceased suggested he take some radiator cores with him. These were stored in a nearby shed, and it then being dark deceased, who was then fully dressed, went into the trailer to get a flashlight. When she returned she was dressed in the slip and bed jacket.

As she walked toward him the deceased told him the flashlight would not work and asked him to try and fix it.

As he prepared to take the flashlight the deceased cursed him and began to fire a pistol at him. After he had been shot three times he pulled his pistol and fired on deceased.

After the appellant had testified the court offered to permit the recall of the first three witnesses offered by the defense in order that their testimony as to the bad character of the deceased might be elicited. Counsel for defense stated he did not care to recall the witnesses.

The defense presented numerous other witnesses who testified that deceased's character was bad, and that she bore the reputation of being a violent, and dangerous person.

There was also considerable evidence as to prior threats and acts of violence by her toward the appellant.

Among the points argued by the appellant's counsel as constituting error are the following three:

1. That the lower court erred in sustaining the State's objections to the questions propounded to the first three witnesses offered by the defense, which questions sought to elicit evidence as to deceased's bad reputation for peace and quiet, etc. As before stated the court sustained these objections on the theory that self defense had not been sufficiently shown at the time to permit the introduction of such evidence.

2. That the lower court erred in sustaining the State's objections to questions propounded to defense witness, Mrs. Luster, which questions sought to bring out details of a conversation between the wit-

ness and her son regarding the deceased's character, appellant contending the State had brought out part of such conversation.

3. That the lower court erred in overruling appellant's objection to a question propounded to Sheriff Holley as to whether appellant's parked automobile was "conspicuously noticeable" from the highway.

It appears that heretofore in a suit filed under the provisions of Section 123, Title 7, Code of Alabama 1940, Rosetta P. Hughes, as Executrix of Sara P. Butler (the deceased in this case) recovered damages against this appellant for deceased's wrongful death.

By stipulation of the parties the civil suit was submitted to the court below on the same evidence adduced in the present criminal proceedings.

An appeal was perfected from the court's judgment awarding damages in the civil suit.

The three points above enumerated as constituting error in this case were likewise presented in the civil proceedings. All three were decided adversely to appellant's contentions. The bases for the conclusions of the Supreme Court on the three points are set forth in its opinion rendered 24 May 1956. This being so we pretermit further consideration or discussion of these questions. See Butler v. Hughes, 264 Ala. 532, 88 So.2d 195.

Counsel for appellant contends further that the lower court erred in admitting into evidence, over appellant's objections, certain writings introduced by the State for comparison with the writing in the letter which appellant testified he had received from the deceased, and was in her handwriting.

The writings appear as State Exhibits Nos. 15, 16, and 17.

It is appellant's contention that the genuineness of these written standards were not sufficiently established to entitle their reception in evidence.

Exhibit 15, supra, the record shows, was admitted into evidence without objection after the appellant had testified that the exhibit in his opinion was probably the deceased's handwriting, the appellant having previously testified he was familiar with the handwriting of the deceased.

Exhibit 16 was the signature of the deceased on an appeal bond filed in the Elmore County Court securing the costs in an appeal to the circuit court, perfected by the deceased in a civil suit between the deceased and the appellant.

This exhibit was injected into evidence through the appellant on his recall for further cross examination.

Counsel for appellant first objected to the introduction of Exhibit 16 on the grounds that it was a matter not in rebuttal. The court overruled the objection.

The allowance of this evidence on recross examination as to matters not in rebuttal was in the sound discretion of the trial court. Dodson v. State, 10 Ala.App. 255, 65 So. 206; Peterson v. State, 227 Ala. 361, 150 So. 156.

The record further shows that upon being shown the signature on the appeal bond, and asked if it was his wife's signature, the appellant replied: "It looks to be."

Upon the State offering only the signature in evidence, counsel for appellant stated: "I will further state that if they will cut off everything except the signature I will not have any objection."

The court thereupon instructed the jury that only the signature on the paper was being offered in evidence, and that any other matter on the paper was not in evidence. The court then admitted the signature on the paper into evidence.

The appellant excepted to the court's ruling admitting the exhibit.

The propriety of offering only a part of a document in evidence for comparison purposes was upheld in Wyatt v. State,

36 Ala.App. 125, 57 So.2d 350, affirmed 257 Ala. 90, 57 So.2d 366.

The appellant's testimony that the offered signature "looks to be" his wife's was we think a sufficient proof of its genuineness and satisfied the requirements of Section 420, Title 7, Code of Alabama 1940.

Furthermore, the signature appeared on a paper taken from the files of a court of record. The proof required of the genuineness of papers taken from the records of a court need not be of such high degree as in other cases. See 20 Am.Jur. p. 620.

We are clear to the conclusion that under all of the circumstances above set forth, and the principles governing, the court did not err in the admission of Exhibit 16, supra.

Exhibit 17 was the signature of the deceased to a detinue bond, executed by the deceased as the defendant in a civil action between the appellant and the deceased. Sheriff Holley testified that he saw the deceased write her signature on this paper. Again only the signature was affected by the prosecution, and admitted by the court.

Obviously no error can be deemed to have infected the ruling in this instance.

The appellant's requested charges were refused without error since they were either affirmative in nature, rendered abstract by the verdict, were argumentative and confusing or were covered by the oral charge of the court or other charges which were given at appellant's request.

The State's motion to strike the transcript of the evidence on the grounds that it was not filed with the clerk below within sixty days of the taking of the appeal is hereby denied. The record shows that the transcript of the evidence was filed with the clerk below within sixty days of the overruling of a seasonably filed motion for a new trial, which motion, by timely continuances, was in fieri at the time of the court's ruling thereon.

The reasons for the above conclusion are fully set forth in our recent case of Koger v, State, ante, p. 476, 87 So.2d 552, and we will not here reiterate such reasons.

Affirmed.